*Court of Common Pleas, Lebanon County, November 9th,* 1858.

### WENGERT *v.* MAULFARE ET AL.

When a judgment is obtained against a person who has a title to land, which is afterward declared void by the Supreme Court, the purchaser of his interest at sheriff's sale has no title and cannot recover.

When a person who has an equitable title to land is made a party to an action of ejectment by his vendor, and fails to set up his equitable right, he and those claiming under him are forever debarred from recovering under it; it is not merely evidence from which the jury might presume that he had abandoned it. The fact that the vendee afterwards leased the property from the vendor will not destroy the former's title, when he was assured by a person in the latter's presence that it would not have that effect, and he (the vendor) assented to it.

Wengert *v.* Maulfare et al., ante, 484, partly overruled.

BY THE COURT.—This cause comes before the court a second time on precisely the same evidence, except as relates to a single point, which was probably substantially proved before as now, though not so clearly expressed by the witnesses. It is now shown by the evidence of John Hean that Daniel Maulfare was present, and assented when Mr. Ely, the deputy sheriff, assured Hean, that accepting a lease would have no effect on his title acquired by parol from Maulfare. This statement is not contradicted. Mr. Ely proved on the former trial that Maulfare came in before the lease was taken, and assented to what was doing, and agreed to the reduction of the rent to almost a nominal sum. Two points are decided by the Supreme Court in relation to this title, as raised by the former evidence, one of which in our opinion is completely removed by the present testimony. If Maulfare was present, and agreed that Hean's rights should not be injuriously affected by accepting the lease, he, and those claiming under him, must stand in the same situation that they would if the lease had not been given and received. The Supreme Court predicates its judgment on two points, as we understand it: 1st, by accepting a lease, John Hean abandoned his former title: 2d, by failing to set it up on the former trial, he is forever barred from claiming under it. It is in the nature of a decree in equity against his title. This decision is binding on us, and our instruction is equally obligatory on you. We take the decisions of the Supreme Court as a matter of *faith,* whether they accord with our own judgment or not. They are of equal force with the acts of Assembly in the inferior courts, on juries, and the citizens at large, until altered or reversed by the tribunal that made them. Neither you nor we are responsible for their justness or correctness. We take it for granted they are both the one and the other. We therefore instruct you that the evidence as given makes out a valid equitable right in the plaintiff to recover the premises in dispute, but for the failure of John Hean, Jr., to set up his equitable title on the trial of the ejectment, Maulfare *v.*

[Wengert v. Maulfare et al.]

Uhler, Hean, Jr., and Ashmead, No. 31, April Term, 1853, and that the judgment given in that case is a perpetual bar to his recovery, and forever extinguishes his equity. Those claiming under John Hean, Jr., stand in the same situation with himself, consequently the plaintiff has no title, and cannot recover. The effect of the lease is entirely destroyed and removed by the evidence now given; but that of the former verdict stands as it did when the Supreme Court passed on the titles of the parties—nothing has, or can change, or impair the effect of that recovery. As we understand the opinion of his honor, Mr. Justice Woodward, the effect of that judgment is the main ground of the decision.

We hold the same opinion now that we did on the former trial; that the parol sale to John Hean, Jr., the delivery of possession, and valuable improvements made by him, gave him a right of possession as against all the world, Maulfare included; that he could retain the possession against Maulfare, who held the legal title, on complying with his contract by paying the purchase-money, or if out of possession, he had such a right of entry as would enable him to regain it on paying, or tendering the purchase-money, the non-payment of which on the day it fell due, did not amount to a forfeiture, and gave Maulfare no legal right to rescind the contract. But under the decision in this case we say that the recovery by Maulfare, in 1853, extinguished Hean's equity; is not merely evidence of an abandonment of the title by Hean, to be passed on and considered by a jury, but amounts to a *flat bar* to his recovery now, and forever. This leaves no question for the jury to decide, and consequently your verdict must be in favor of defendants.

Both plaintiff and defendants have raised various points of law, which they consider applicable to their case; but, as what we have said is decisive, no further instruction will now be given, and we will answer the points hereafter in our written charge.

The defendants' counsel state in their argument that they desire us to consider as raised by them all the points they raised in the former trial, and also one more: "That the judgment obtained against Hean was no lien on his equity, and the sheriff's sale did not pass it to the plaintiff; consequently he has no title, and cannot recover." All the points raised before are considered fully answered in our former charge. We adopt it now, and it may be considered and taken as part of the present. This will give a full opportunity to raise and reargue the questions thus presented. In answer to the new point raised by the defendant: If Hean had no title to or interest in the estate, at the time of the levy and sheriff's sale in 1855, no title passed to Wengert, the purchaser. The Supreme Court has decided that Hean's title was extinguished by the recovery in 1853; consequently the plaintiff acquired no title. When the judgment in favor of Hickernel, on

[Wengert *v.* Maulfare et al.]

which the *fi. fa.* issued, was obtained in 1851, Hean had an interest in the property which was bound by it. Although but an equity, yet we consider that, according to the settled law of Pennsylvania, every kind of equitable interest which a man may have in real estate, is bound by a judgment entered against him and may be seized by his creditors. In Carkhuff *v.* Anderson (3 Binn. 4), it is held that every kind of equitable interest in land is bound by a judgment, and that was applied to a Connecticut claimant, whose title was *void*, but who had a right to come in and have it confirmed, which was not done by him, but by the assignee at sheriff's sale. Even an inchoate interest, provided it be an *estate*, is bound (2 Rawle, 188). So every kind of title, *contingent* or *otherwise* (1 Yeates, 427). A purchaser at sheriff's, sale before payment of the money or execution of the deed, has such interest (7 W. 437). So where land was conveyed in fee for building a schoolhouse, with condition of reverter annexed to the grant if the contract was violated, it was held that the grantor had such an interest by the possibility of forfeiture as was bound by a judgment and could be sold (4 Harris, 140). So where property was purchased at auction, and judgment obtained before money paid or deed made (8 W. & S. 186). So where a lease was taken with the condition that, if the tenant made valuable improvements, he should have the land at a price to be fixed afterwards (5 S. & R. 124). Where lands are legally assigned by deed for the benefit of creditors, the possibility of reverter to the assignee may be bound (9 Harris, 29). So the interest of tenant by the curtesy *initiate*, and tenant in dower. In short, says Judge Rogers, in 3 Barr, 69, " *Every interest of every description in land* may be sold by the sheriff" (see 12 S. & R. 12). We have no doubt that Hean at one time had such an interest in this house and lot as might be and was bound by the judgment in this case, but according to the decision, that interest was extinguished before the sale. Although a purchaser by parol has but an equity which may be abandoned, yet there are cases where he would be precluded from so doing; as where a man had bought by parol land of little value, and put on it extensive and valuable improvements, he would not be permitted to abandon his right, to the injury of his creditors and benefit of his vendor; but the creditors could, notwithstanding the abandonment, seize it for their debts, and on complying with the conditions of purchase, would be entitled to all the rights and benefits which their debtor could have claimed.

We will now proceed to examine the legal questions presented by the plaintiff's counsel in his argument. He contends " that the title of the plaintiff is sufficiently established by the evidence, and the recovery in ejectment by Maulfare, in 1853, does not destroy or impair it; but the failure to set it up is mere evidence, from which the jury may or may not infer an aban-

[Wengert *v.* Maulfare et al.]

donment, and the subsequent acts and declarations of both vendor and vendee repel that idea. That taking the lease, under the circumstances stated, is not a relinquishment of the title; and failure to pay the purchase-money when due is excusable, on account of the uncertainty of Maulfare's title, and the same was paid, or offered, in a reasonable time after his right to the property was established." We have already expressed the opinion, that the title of John Hean, Jr., although founded on a parol sale, was good and valid. There has been, of late, an apparent effort on the part of our Supreme Court, to get clear of the decisions establishing the validity of such sales, and come down to the *letter* of the statute; but in our humble judgment, such decisions not only tend to shake our confidence in a system of jurisprudence founded on a long train of adjudicated cases, but to counteract the intention of the legislature. It must be borne in mind that our act of Assembly is fashioned from the statute 29 Charles II, commonly called the statute of frauds and perjuries, which had been in force for about one hundred years before ours was enacted, and under which it had been repeatedly decided by the courts, that the statute was designed to prevent fraud, as well as perjury, and parol sales and leases of land had often been sustained, when accompanied with delivery of possession, and valuable improvements made, and where it would have been against equity to revoke or set them aside. These decisions were well known to our law-makers, and it must be presumed that the legislature framed the act with a view to them, and expected, and intended it to receive, the same construction given to the present statute. The failure to pay the purchase-money promptly is sufficiently accounted for. Shortly after Maulfare sold to Hean, Ashmead brought his ejectment, and should his title prevail, none could be made by Maulfare to Hean. That contest was urged with various success till the close of 1850, when final judgment was entered in favor of Ashmead, whose title was decided to be valid by the Supreme Court. So long as that decision stood in force, Maulfare could not demand and Hean need not pay or tender the purchase-money. Maulfare never established his title, so as to show that it was valid, until the 14th of September, 1854, when it was settled in his favor by the Supreme Court. Hean was not bound to regard the adjudication of the Court of Common Pleas of Lebanon County, in November, 1853, as he had no reason to suppose that the court of last resort in the State intended to revoke its own decision, and declare valid a title which, but four years previously, it had said was void. The tender was made and deed demanded on the 8th of January, 1856. This was within a reasonable time, and if Maulfare desired more prompt payment, he might have hastened it by request. Taking the lease, under the circumstances

[Wengert *v.* Maulfare et al.]

stated by John Hean in his evidence, will not operate as a bar to his title, and if Maulfare agreed that it should have no such effect, it would be fraud on Hean to give it an operation not intended by the parties. Accepting the lease would oblige Hean to give up possession to Maulfare, but he could afterwards contest his title as fully as if it had not been taken (Lewis *v.* Bradford, 10 W. 78; Treaster *v.* Fleisher, 7 W. & S. 139; Miller *v.* Shaw, 7 S. & R. 129). The subsequent transaction with Hean in April, 1855, by which he was induced to pay fifty dollars as tenant to Maulfare for another year, should have no weight in this case; it was a mere imposition practiced on an ignorant man, by making him believe that by remaining on the premises after the 1st of April, it was a continuance of his lease for another year, at such rate of rent as the landlord chose to impose; whereas, in reality, it was at most an implied contract to remain at the same rent fixed in the former lease, to wit, three dollars from September till April. By continuing on after the first of April, under the circumstances, no contract of any kind was raised.

The plaintiff's counsel most strenuously contends, that the failure to set up the parol sale, as a defence against the ejectment brought by Maulfare, was not a bar to Hean's claim, but only evidence, from which the jury may, or may not, infer that it was abandoned. Such, in our own opinion, is the law, but we do not so understand the decision of the Supreme Court. The decision, as we understand it, is, that the recovery is in the nature of a decree in equity, and destroys the right, extinguishes it forever! True, the evidence shows that the title of Hean was never passed on, was not even presented for adjudication; this was a fact conceded on the former, and proved on the present trial. No title in Hean, as acquired from either Ashmead or Maulfare, was then presented for the consideration of the court and jury. The only matter in controversy was the respective titles of Ashmead and Maulfare, and the only point decided, or passed on, by the court below, was, that the Supreme Court had since settled the law differently from their former adjudication between the same parties.

Although it must be conceded that a decree by a court of chancery is equally conclusive with a judgment at law, in respect to all matters adjudicated, and cannot be questioned collaterally in another, or directly in the same case, except by a bill of review, only entertained for particular reasons and under special circumstances, yet, as we conceive, such a decree is only conclusive of the *points and rights presented by the record.* The bill, answer, and decree, must show what was passed on by the court. If an action of ejectment is to be treated as a bill in chancery, for the purpose of settling the rights of the parties, it should not

[Wengert *v.* Maulfare et al.]

be carried beyond such a proceeding in its effect. In the present case, if everything which transpired on the trial between Maulfare, Ashmead, and Hean, in 1853, had been proved, it would conclusively show that this title or equity was not presented for adjudication. A decree in equity only puts an end to the *points* there decided (1 Howard, 148-9). And it must be conclusively shown that the *same points* were put in issue, and the rights afterwards attempted to be set up were conclusively determined (13 Ohio Rep. 430, 450-1; 7 John. C. R. 1). Here, it is conclusively shown that this right was not determined. It is a maxim of equity, that in order to ask for its interposition, the party must show himself ready, desirous, prompt, and eager to perform his part of the contract. We are entirely unable to see any backwardness on the part of Hean here. He is not required in equity to be ready, prompt, and eager to *litigate*, and *contest his right*, but to comply with his bargain. When the suit was brought, in 1853, by Maulfare *v.* Ashmead and Hean, there was no reason to suppose that the former had any title, and he certainly did not claim that Hean should turn out, or pay his purchase-money. From all appearance, throughout the trial, and till the argument had commenced, it was a mere experiment, to see if a change in the court, under the present Constitution, would not lead to a change of decision on the point destructive to Maulfare's title before. Nothing was presented but the original titles of Ashmead and Maulfare, and although Hean was present, he took no part in the controversy. On the argument, a manuscript decision, made a few weeks previous at Sunbury, was produced, which we considered conclusive of the rights of the parties, and so instructed the jury. Down to that time Hean had no reason to suppose that Maulfare had a title, could comply with his contract by giving him one, or that he (Hean) could safely or properly pay him his money. It has often been held, in Pennsylvania, that the failure to pay money on a particular day is no bar in equity, and even where a vendee promised that unless he paid by a certain time he would give up possession, he was still entitled to have further time, and a conditional verdict (Dixon *v.* Oliver, 5 W. 509).

Courts of equity grant relief in contracts relating to real property to a far greater extent than as to personal, whether it relates to failure of payment or to make title (2 Story, Equity, sec. 746-7). The doctrine of such courts is not forfeiture, but compensation (Idem, sec. 775, 776). And circumstances of surprise, mistake, or misapprehension constantly led to relief (Idem, vol. 1, sec. 119, 120, 251).

In order to bar the parties' rights, even in a court of law, the decision must be on the same title. Although two verdicts and judgments had been rendered against a party, which were con-

tended to be conclusive of his right, yet he was afterwards permitted successfully to set up another title, held by him at the same time, as it had never been presented or passed on by the court (Treaster *v.* Fleisher, 7 W. & S. 137).

At each time when the present case was tried, the act of April 21st, 1846, was supposed to be in full force; therefore no question was raised as to the effect of one verdict and judgment operating as a bar. The repeal of that act has been since discovered, although the repealing act is not yet published. According to our ideas of the law, the repeal of that statute is unimportant for two reasons.

First. It must appear either from the record, or from the evidence presented on the first trial, or the claim then urged, that the object was to enforce an equity, and that the ejectment was brought as a substitute for a bill in chancery. Neither can be predicated of the action tried in 1853. The record does not show that purchase-money was demanded. No evidence was produced on the trial to show that any was due; the possession was not required to be restored because it had not been paid. The contract of sale was not set up either by way of claim or defence. It was a legal form of action brought to enforce a legal right, and founded on a legal title, and the defence was rested on a title of the same character. No question of equitable title was presented.

And, secondly. We are of the opinion that under the act of the 13th April, 1807, there must be at least two verdicts and judgments thereon, against the same party, or rather, against the same title, to bar the right.

More than one-half of all the ejectments ever tried in Pennsylvania were founded on equitable titles, and in every such case the writ was used as a substitute for a bill in equity. Every claim by settlement right, every mere application and survey without warrant, and many other titles recognized by our laws, have been held sufficient to support such actions in our courts of law, and yet would be entirely insufficient in those courts where the distinction has been maintained between legal and equitable proceedings. We are unable to see how an action brought by the holder of a strictly legal title against his vendee by articles of agreement can be considered as partaking of the nature of a bill in equity, although such vendee may defend under his article, by paying the purchase-money, or have the amount ascertained by a verdict. If one trial in such case should not be conclusive against the legal right of the plaintiff, why should the defendant be concluded? Where the jury, by their verdict, have fixed the equities between the parties, it is in the nature of a decree, and must be complied with, or the right is gone, but a mere general verdict only fixes the right of possession, and by the common law, and

[Wengert *v.* Maulfare et al.]

under the act of 1807, is not conclusive. For these reasons we have always considered the case of Seitzinger *v.* Ridgway (9 W. 496), a perversion of the laws of Pennsylvania. Before that decision the Supreme Court had declared, in Youst *v.* Martin (3 S. & R. 423, 432), that although defeated in his action founded on an article of agreement, the vendee could recover in another action, and he did so recover. In Ives *v.* Leet (14 S. & R. 301), the right to two verdicts and judgments is again asserted, and by Chief Justice Tilghman, who says, at p. 303, that the act was framed with great caution, because the object was to deprive the party of a right which had always been enjoyed before, of having more than two verdicts against his claim before it would be concluded. All of the evils apprehended and deprecated by Judge Kennedy, in Seitzinger *v.* Ridgway, of different juries finding different sums due on the article, has been, as I conceive, effectually removed by the decision in Gable *v.* Hain (1 Penna. Rep. 265), that "where the jury fixes the amount due, and determines the time within which it shall be paid, if not done, the title is gone," and I apprehend, if paid, it is equally binding on the other party, and his right to turn the vendee out of possession or have another fix a different sum is forever at an end. These principles have settled hundreds of cases in Pennsylvania. Where no sum of money was decreed to be paid, or time fixed for payment, according to Youst *v.* Martin, the vendee, if turned out, could tender the money due and regain possession by an action. The same judge who delivered the opinion in Seitzinger *v.* Ridgway, had previously declared in Mercer *v.* Watson (1 W. 344), that "what a court of chancery would do is not to be our guide, because the act of Assembly has been given as a rule of decision as to the number of verdicts and judgments which should be a bar between the parties upon the same title." Great dissatisfaction was felt by the legal profession with the decision in Seitzinger *v.* Ridgway, and it led to the immediate passage of the act of May 5th, 1841, repealed and modified, but retained in substance, by that of April 21st, 1846.

All of this is, however, beside the present case, having but little bearing upon it, as it must be conceded that an equity arising from a purchase and improvements made, may be abandoned, and if abandoned or extinguished it will be insufficient to support a first or second ejectment.

AFFIRMED BY THE SUPREME COURT, June 30th, 1859. Not reported.

*Williamson, for plaintiff.*

*Funck and Fisher, for defendant.*